UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------------------X
In re:                                      :
                                            :
            BRYAN CAISSE,                   :            Chapter 7
                                            :            Case No. 15-12777 (SMB)
                        Debtor.             :
----------------------------------------------------------X
CHARLIE MILLS a/k/a CHARLES MILLS           :
and SALERA CAPITAL MANAGEMENT, LLC,         :
                                            :
                    Plaintiffs,             :
                                            :
        – against –                         :            Adv. Pro. No. 15-01435
                                            :
BRYAN CAISSE,                               :
                                            :
                    Defendant.              :
----------------------------------------------------------X
```

## MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT

**A P P E A R A N C E S:**

DAY PITNEY, LLP
Attorneys for Plaintiffs
1100 New York Avenue, N.W.
Suite 300
Washington, D.C. 20005

      Steven A. Cash, Esq.
         Of Counsel

KASEN & KASEN
Attorneys for Defendant
151 West 46th Street – 4th Floor
New York, New York 10036

      Michael J. Kasen, Esq.
         Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Charlie Mills a/k/a Charles Mills ("Mills") and Salera Capital Management, LLC ("Salera," and collectively with Mills, the "Plaintiffs"), through their First Amended Complaint, dated Aug. 12, 2016 ("FAC") (ECF Doc # 16),[1] seek money judgments on their claims and a declaration that the debts are nondischargeable.  Bryan Caisse, the defendant and debtor, has moved to dismiss the FAC for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure.  (*Memorandum of Law in Support of Defendant Bryan Caisse's Motion to Dismiss Plaintiffs' First Amended Complaint*, dated Aug. 26, 2016 (the "Motion"), at 1-2 (ECF Doc. # 19).)  For the reasons that follow, the Motion is granted in part and denied in part, and Salera is granted leave to replead the dismissed claims.

## BACKGROUND

Mills and Caisse attended the United States Naval Academy, and subsequently served in the Marine Corps and Navy, respectively. (¶¶ 12-16, 23.)[2]  After Mills left the Marine Corps, he joined Bear Stearns & Company and subsequently founded Salera, an entity that made short-term secured and unsecured loans mostly to Government contractors.  (¶¶ 17-20.)  After Caisse left the Navy, he worked in the financial industry. (¶ 25.)  He remained active in the extensive network of Naval Academy alumni, which

---

[1]    "ECF Doc. # ___" refers to documents filed on the docket in this adversary proceeding.

[2]    "¶¶ ___" refers to the paragraphs in the FAC.

included Mills, and they maintained a close personal relationship largely based on their shared college and military experiences.  (¶¶ 24, 26.)

## A.    The Loans

In March 2009, Caisse contacted Mills to borrow money.  (¶ 32.)  According to the FAC, Caisse made two false statements to induce Mills or Salera to make a loan. First, he told Mills that he needed the funds for a venture, Huxley Capital Management ("Huxley").  (¶ 33.)  Second, he claimed that he was due a significant tax refund and would send the refund directly to Salera as payment for the loan.  (¶ 36.)  To bolster this representation, Caisse sent Mills a copy of his 2008 tax return, under cover of a letter from Bloom CPA, PLLC, and an IRS Form 8822 – a change of address form – dated April 4, 2006.  (¶ 36.)  Together, they purported to show that Caisse was due a tax refund of $175,144, and the refund would be sent directly to Mills.  (¶ 37.)  Relying on these representations, Salera made a loan to Caisse or Huxley in April 2009 (the "April Loan"), but the FAC does not state the amount of the loan.  (¶ 38.)

By August 2009, Caisse had defaulted on the April Loan, and sought to refinance it.  (¶ 41.)  To induce a second loan, Caisse made further representations to Mills, including that the IRS refund had not been received but was imminent.  (¶ 41.)  On or about August 5 and 6, 2009, Caisse and Salera entered into an agreement to loan Caisse $150,000, to be repaid within ninety days, Caisse signed two promissory notes, and Salera disbursed $150,000 to Caisse (the "August Loan").  (¶¶ 42-44.)  The April 2009 loan was eventually repaid, (¶ 38), apparently from another source of funds.

The due date for the repayment of the August Loan was November 3, 2009, but Caisse defaulted. (¶ 47.)  Following the default, Caisse made several false statements to Mills to the effect that repayment would be forthcoming, and as a result, Mills and Salera did not take legal action.  (¶¶ 48-53.)  On January 21, 2010, Mills sent Caisse a demand letter advising him of his default, (¶ 55; FAC, Ex. A), but Caisse and a person purporting to be Caisse's attorney continued to indicate that Caisse would repay the August Loan, and Mills and Salera continued to forebear.  (¶¶ 56-68.)

On February 6, 2012, Mills sued Caisse in Virginia state court.  (¶ 69.)  Following a one-day trial at which both Mills and Caisse testified, the court found in Salera's favor and entered a judgment on March 12, 2013 in the amount of $694,910, plus post-judgment interest at the judgment rate (the "Judgment").  (¶¶ 76-77.)  Of that amount, $150,000 represented the unpaid August Loan.  On May 31, 2013, the Judgment was domesticated as a New York judgment.[3]  (¶ 78.)

## B.   The Criminal Proceedings

Around the same time, the New York District Attorney (the "DA") began a criminal investigation of Caisse.  (¶¶ 79-81.)  On October 9, 2013, Caisse's attorney asked the DA to return Caisse's passport, which had been seized during the execution of a search warrant, stating that Caisse had to travel on business and would return to face any proceedings.  (¶¶ 82-83.)  In addition, the DA was assured that Caisse would not

---

[3]    The Judgment and the order domesticating the Judgment are attached to Salera's Proof of Claim, dated Nov. 9, 2015 (the "Salera Claim").  The Court takes judicial notice of the contents of the Claim which is referred to in the FAC.  (See ¶ 110.)

abandon his young daughter.  (¶84.)  The DA returned the passport, but Caisse fled to Colombia.  (¶¶ 84-89.)

Sometime thereafter, the DA indicted Caisse on eleven counts.  (FAC, Ex. C.) Counts III and IV charged Caisse with Grand Larceny in the Second Degree against "INDIVIDUAL #3" during the periods August 6 to August 26, 2009 and April 7, 2009 to May 8, 2009, respectively.  "INDIVIDUAL #3" referred to Mills.  (¶ 94.)  Count XI charged Caisse with a Scheme to Defraud in the First Degree, alleging that between April 2008 and October 25, 2013, he "engaged in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person and to obtain property from more than one person by false and fraudulent pretenses, representations and promises."

Caisse was subsequently arrested in Bogota, Colombia on January 18, 2014, and returned to the United States.  (¶ 89.)  The DA's Office issued a press release a few days later announcing the indictment.  (¶ 99.)  The press release stated that Caisse had run a Ponzi scheme through Huxley, had defrauded friends and Naval Academy classmates of over $1 million and had made additional fraudulent representations to evade his victims' efforts to collect their money.  (*Id.*; *accord* ¶ 101.)

Caisse pleaded guilty on August 11, 2014 in the Supreme Court of the State of New York to Counts VIII and XI, (¶ 103; FAC, Ex. D), and was sentenced to 1 ½ to 4 ½ years in prison.  (¶ 107.)  The Supreme Court issued an Order, dated November 12, 2015 (the "Restitution Order"), (FAC, Ex. E, at pp. 1-5), as part of the plea agreement.  Among other things, the Restitution Order required Caisse to pay restitution to Safe Horizon

which was designated pursuant to New York Criminal Procedure Law § 420.10(1) as the restitution agency. (Restitution Order at p. 1 ¶ 2.) Safe Horizon would receive the payments, establish a restitution fund, and distribute the payments to the individuals listed on the annexed Exhibit A. (*Id.* at pp. 1-3 ¶¶ 2, 5.) Exhibit A included Mills and indicated that he was due restitution in the amount of $119,000.00. In addition, Caisse signed an Affidavit of Confession of Judgment, sworn to October 8, 2014 (the "Confession") in favor, *inter alia*, of Mills for the same amount. (FAC, Ex. E at p. 7 ¶ 2.)

## C.    The Bankruptcy

After his release from prison, Caisse filed a chapter 7 petition on October 14, 2015. (¶¶ 108-09.) Salera thereafter filed the Salera Claim in the amount of $854,434.68, (¶ 110), apparently representing the amount of the Judgment plus accrued post-judgment interest. In addition, Mills filed a proof of claim in the amount of the Restitution Order, $119,000 (the "Mills Claim"). (¶ 111.)

The Plaintiffs filed this adversary proceeding on December 30, 2015, and filed the FAC on August 12, 2016. The FAC asserts four claims for relief. Salera seeks a declaration of non-dischargeability of the Salera Claim in the First, Second and Third Claims under 11 U.S.C. § 523(a)(2)(A), (a)(2)(B) and 523(a)(4), respectively. In the Fourth Claim, Mills seeks a declaration of non-dischargeability of the Mills Claim, which is based on the Restitution Order, under 11 U.S.C. § 523(a)(7). The Plaintiffs also seek a money judgment in the amount of the Salera Claim acknowledging that it subsumes the Mills Claim. (FAC at pp. 21-22.) Caisse filed the Motion to dismiss all of the claims for failure to state a claims on which relief can be granted.

## DISCUSSION

To state a legally sufficient claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 556. In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is deemed to include any written instrument attached to it as an exhibit, documents incorporated in it by reference, and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (quotations and citations omitted); *accord Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992).

If the complaint alleges fraud, the plaintiff must also satisfy Rule 9(b) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Federal Bankruptcy Rule 7009. Federal Civil Rule 9(b) requires the plaintiff to plead fraud with particularity.[4] Although *scienter* may be pleaded generally, the pleader must

---

[4]    Federal Civil Rule 9(b) states:

"allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted).  Finally, even when fraud is not an element of the claim, the allegations must satisfy FED. R. CIV. P. 9(b) if the claim sounds in fraud.  *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) ("Rule 9(b) . . . is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action.").  "Generally, a non-fraud claim will 'sound in fraud' if the claim arose out of events that the pleading describes in terms of fraud or the pleading includes a claim based on fraud, and the non-fraud claim incorporates the fraud allegations." *Official Committee of Unsecured Creditors of Grumman Olson Indus., Inc. v. McConnell* (*In re Grumman Olson Indus., Inc.*), 329 B.R. 411, 429 (Bankr. S.D.N.Y. 2005); *accord Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 2d 426, 442 (S.D.N.Y. 2015); *see Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.,* 341 F.Supp.2d 258, 269 (S.D.N.Y.2004) ("A claim sounds in fraud when, although not an essential element of the claim, the plaintiff alleges fraud as an integral part of the conduct giving rise to the claim.").

    Before turning to the claims some preliminary observations are in order.  First, the April Loan was repaid and is not included in the Judgment.  Thus, there is not debt arising from the April Loan that can be non-dischargeable.  Second, the Plaintiffs seek a money judgment in the amount of the Salera Claim, but already have a judgment plus interest in that amount.  The Court may declare a "debt" non-dischargeable, and that includes a debt merged into a judgment.  The Plaintiffs do not explain why another

---

In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

money judgment is appropriate or necessary.  Third, the amount of the Judgment far exceeds the amount of the $150,000 August Loan.  The Plaintiffs have not explained why the entire Judgment, which is subsumed in the Salera Claim, should be declared non-dischargeable.

## A.      First Claim – 11 U.S.C. § 523(a)(2)(A)

Bankruptcy Code § 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  The Supreme Court has historically given the terms in § 523(a)(2)(A) their common law meaning. *Husky Int'l Elec., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016) (citing *Field v. Mans*, 516 U.S. 59, 69 (1995).  The parties agree that under § 523(a)(2)(A), the plaintiff must allege that the defendant knowingly made a misrepresentation with the intent to deceive the plaintiff, and the plaintiff justifiably relied on the misrepresentation and suffered damages as a result.  (*Compare* Motion at 7 *with Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Amended Complaint*, dated Sept. 20, 2016, at 3-4 ("Opposition") (ECF Doc. # 21).)  Whether a debtor intended to defraud a creditor within the scope of Section 523 depends on the debtor's "actual state of mind ... at the time the charges were incurred," *Fleet Credit Card Servs. v. Macias (In re Macias)*, 324 B.R. 181, 188 (Bankr. E.D.N.Y. 2004) (quoting *MBNA Am. v. Parkhurst (In re Parkhurst)*, 202 B.R. 816, 822 (Bankr. N.D.N.Y. 1996)), and allegations that Caisse failed to perform promises he made at the time the debt was incurred do not imply that he did not intend to fulfill those promises at the time they were made.

9

*Citibank (South Dakota), N.A. v. Spradley* (*In re Johnson*), 313 B.R. 119, 129 (Bankr. E.D.N.Y. 2004) (citing *Colonial Nat'l Bank v. Leventhal* (*In re Leventhal*), 194 B.R. 26, 31 (Bankr. S.D.N.Y. 1996) (quoting *Chase Manhattan Bank v. Murphy (In re Murphy)*, 190 B.R. 327, 333-34 (Bankr. N.D. Ill. 1995))).  Otherwise, every breach of contract claim would also sound in fraud.

The FAC alleges that Salera was induced to make the August Loan based upon the representation that the IRS payment had not yet been received but was imminent, (¶ 41), and perhaps by implication carried over from the April Loan, that the refund would be paid directly to Salera.  The FAC also alleges that Caisse made "further representations," (*see* ¶ 41), but does not set them out as required by Federal Civil Rule 9(b).

Finally, the FAC alleges that Caisse and a person purporting to be his attorney made additional false representations when Salera demanded repayment, (¶¶ 48, 51, 57, 60, 63, 66), but does not allege that Salera obtained any additional money, property or services after the August Loan.  Salera does allege that it "extended" the August Loan as a result of the misrepresentations, (¶¶ 49, 52, 58, 61, 64, 67), but confuses an extension with forbearance.  An "extension agreement" is "[a]n agreement providing additional time for the basic agreement to be performed."  BLACK'S LAW DICTIONARY 703 (10th ed. 2014).  "Forbearance" refers to "[t]he act of refraining from enforcing a right, obligation, or debt."  *Id.* at 760.

The FAC does not allege that Salera extended the due date for the August Loan.  Instead, it alleges that Salera "declin[ed] to take legal action" based on the allegedly false

representations.  (¶¶ 49, 52, 58, 61, 64, 67.)  A creditor cannot predicate a non-dischargeability claim based on fraudulently induced forbearance in the absence of a separate injury, and Caisse's subsequent fraudulent conduct is irrelevant to the non-dischargeability claim.  *Wright v. Minardi* (*In re Minardi*), 536 B.R. 171, 188 (Bankr. E.D. Tex. 2015) ("[F]raudulent conduct occurring subsequent to the time that an indebtedness is created is generally irrelevant to the issue of whether the debt was 'obtained by false pretenses, a false representation, or actual fraud' within the meaning of § 523(a)(2)(A) of the Bankruptcy Code."); *Standard Bank & Trust Co. v. Iaquinta* (*In re Iaquinta*), 95 B.R. 576, 578 (Bankr. N.D. Ill. 1989) ("Subsequent misrepresentations or fraud will have no effect upon the discharge of the debtor.")  Consequently, the only representation that the FAC specifically identifies as inducing the August Loan is the one regarding the imminent receipt of the tax refund.

Caisse contends that the FAC fails to allege falsity, intent to deceive or damages, (Motion at 7-8), and Plaintiffs concede that the FAC does not include "boilerplate" allegations of knowledge of falsity and intent to defraud.  (Opposition at 5.)  Mere "boilerplate" allegations, however, are not sufficient.  *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").  Salera must allege *facts* that support a claim under § 523(a)(2)(A).[5]

---

[5]    The FAC alleges that the statements relating to the refund were false, and "upon information and belief, that Caisse was due and received no refund."  (¶ 40.)  A plaintiff may plead facts alleged on information and belief "where the facts are peculiarly within the possession and control of the defendant…or where the belief is particularly based on factual information that makes the inference of culpability plausible."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted).  However, allegations pled on information and belief "must be 'accompanied by a statement of the facts upon which the belief is founded.'"  *Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312 ER, 2013 WL 1809772, at

Furthermore, the FAC's incorporation of the indictment and reiteration of the allocution and the DA's statements do not cure the deficiencies because they do not identify any knowingly false statements that Caisse made to induce the August Loan. The Third Count of the Indictment accused Caisse of Grand Larceny in the Second Degree by stealing property exceeding $50,000 in value from Mills in violation of N.Y. PENAL LAW § 155.40(1).  (FAC, Ex. C, at p. 2.)  "Larceny" includes common larceny by trespassory taking and by acquiring lost property, which do not require fraudulent statements, as well as common law larceny by trick, obtaining property by false pretenses and false promise, which do.  *See* N.Y. PENAL LAW § 155.05(2)(a), (b), (d). Thus, the mere charge of larceny does not satisfy the elements of common law fraud, and in this case, does not include facts detailing a connection between the crime charged and the allegations needed to plead a legally sufficient fraud claim.  The Eleventh Count alleges an ongoing systematic course of fraudulent conduct involving false and fraudulent pretenses, representation and promises, but does not identify a specific pretense, representation or promise made by Caisse to Mills or imply that Caisse knowingly misrepresented the imminence of a tax refund.  Caisse's allocution is no more specific and merely recites the allegations in the Indictment.  (¶ 103.)

The DA's statements amplify the criminal charges but still fall short.  They include assertions that Caisse operated a Ponzi scheme, and induced friends and acquaintances through false representations to invest in Huxley, the vehicle for his fraud.  In addition, Caisse continued to make false statements and engage in fraudulent

---

*3 (S.D.N.Y. Apr. 30, 2013) (quoting *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006)).  The FAC includes no such factual allegations.

conduct to cover up his crimes. The DA's statements, like the Indictment, do not identify any specific representation that Caisse made to Mills. They highlight a pattern of dishonesty relating to Caisse's solicitation of money from acquaintances, but do not say or imply that everything that Caisse said to Mills, particularly regarding the imminence of the tax refund, was false or made with the intent to deceive. In fact, the FAC does not allege that Caisse told Mills that the August Loan was for Huxley or his ventures; instead, it alleges that it was solicited to refinance the April Loan which was eventually repaid although apparently from other sources.

In short, the FAC does not plausibly imply that Caisse told Mills the August Loan would be used to fund Huxley, that Caisse knew that a refund was not actually imminent or that Caisse lied when he told Mills that he had directed the IRS to pay the imminent refund to Salera. Instead, the FAC alleges that Caisse was a fraudster and a convicted felon, (*e.g.*, ¶¶ 1-6), but it is not enough that Caisse is a bad person. The allegations of a fraudulent scheme that do not identify with sufficient particularity how Caisse defrauded Salera do not fill the vacuum.

## B.    Second Claim – 11 U.S.C. § 523(a)(2)(B)

Bankruptcy Code § 523(a)(2)(B), in relevant part, excepts from discharge any debt "for money, property or services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . use of a statement in writing . . . that is materially false; . . . respecting the debtor's . . . financial condition; . . . on which the creditor . . . reasonably relied; and . . . that the debtor caused to be made or published with intent to deceive." The Second Claim does not identify the written statement of financial condition that Caisse showed the Plaintiffs to induce the August Loan. Assuming that it is referring to

the tax return shown to induce the April Loan, and without deciding whether a tax return is a statement of financial condition within the meaning of § 523(a)(2)(B), the Second Claim suffers from the same pleading deficiencies as the First.[6]  The FAC fails to allege facts supporting the inference that the tax return was false, that Caisse knew it was false or that he showed it to the Plaintiffs to induce the August Loan with the intent to deceive them.

## C.     Third Claim – 11 U.S.C. § 523(a)(4)

Bankruptcy Code § 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  "The meaning of the words in § 523(a)(4) is a question of federal law."  *McGee v. Mitchell* (*In re McGee*), 353 F.3d 537, 540 (7th Cir. 2003); *Adamo v. Scheller* (*In re Scheller*), 265 B.R. 39, 53 (Bankr. S.D.N.Y. 2001) (citing cases).  The Third Claim invokes the "larceny" exception, which, contrary to Caisse's argument, (*see* Motion at 9-10), does not require a fiduciary relationship.  *Bullock v. BankChampaign, N.A,* 133 S. Ct. 1754, 1760 (2013) (Section 523(a)(4) "makes clear that [larceny and embezzlement] apply outside of the fiduciary context."); 4 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 523.10[2], at 523-76 (16th ed. 2016) ("In section 523(a)(4), the term 'while acting in a fiduciary capacity' does not qualify the words 'embezzlement' or 'larceny.'  Therefore, any debt resulting from embezzlement or larceny falls within the exception of clause (4).") (footnote omitted).

---

[6]      The Plaintiffs may also be relying on the accountant's letter and IRS Form 8822 given to Mills at the same time.  The FAC does not disclose the contents of the accountant's letter, and hence, fails to show that it related to Caisse's financial condition.  Similarly, the change of address form does not appear to relate to Caisse's financial condition.

"Larceny is the (1) wrongful taking of (2) property (3) of another (4) without the owner's consent (5) with intent to convert the property," *Scheller*, 265 B.R. at 53, and requires proof that the debtor fraudulently intended to take the creditor's property. *New York v. Sokol* (*In re Sokol*), 170 B.R. 556, 560 (Bankr. S.D.N.Y. 1994), *aff'd*, 181 B.R. 27 (S.D.N.Y. 1995), *aff'd and remanded*, 113 F.3d 303 (2d Cir. 1997); *see Bullock*, 133 S. Ct. at 1760 ("'larceny' requires taking and carrying away another's property.") Larceny and embezzlement are substantially similar, but differ in one important respect. "Larceny is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner.  As distinguished from embezzlement, the original taking of the property must be unlawful."  4 COLLIER ¶ 523.10[2], at 523-77 (footnote omitted); *accord Scheller*, 265 B.R. at 54.

Salera essentially contends that Caisse obtained title to and possession of its funds by misrepresenting a past or present fact (*i.e.*, larceny by false pretenses) or his future intention to perform (*i.e.*, larceny by false promise).  *See People v. Norman*, 650 N.E. 2d 1303, 1307-08 (N.Y. 1995) (explaining the distinctions between the common law crimes of larceny).  In either case, the discharge exception depends on proof*, inter alia*, that Caisse knowingly made a false statement or promise with the intent to induce Salera and/or Mills to loan him money.  Federal Civil Rule 9(b) applies because the claim is based on Caisse's fraud, but the FAC fails to plead fraud with the particularity for the reasons stated.

15

Accordingly, the First, Second and Third Claims are dismissed.  However, it appears that Salera may be able to cure the pleading deficiencies, and the Court grants leave to replead these claims.

### D.    Fourth Claim – 11 U.S.C. § 523(a)(7)

Bankruptcy Code § 523(a)(7), in relevant part, excepts a debt from discharge "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss."  To be non-dischargeable, the debt must satisfy three elements:  (1) the debt must be for a fine, penalty or forfeiture, (2) it must be payable to and for the benefit of a governmental unit and (3) it must not be compensation for actual pecuniary loss.  The last two elements are referred to as the qualifying clauses.  Whether a debt is the type excepted from discharge under § 523(a)(7) is a question of federal law.  Caisse contends that Mills has not shown that Caisse owes him any money and his inclusion in the Restitution Order was improper, that the restitution was not for the benefit of a governmental unit and the restitution was compensation for actual pecuniary loss.  (Motion at 8-10)

Caisse's first argument deserves short shrift.  The Restitution Order was part of the plea and sentence agreement, (Restitution Order at p. 1 ¶ 1), required Caisse to pay Mills (among others) $119,000, (*id.* at .p. 1 ¶ 1 and p. 5) and provided that the failure to make the restitution payments would subject Caisse to prosecution for criminal contempt or other crimes.  (*Id.* at ¶ 7.)  Caisse signed the Restitution Order acknowledging his obligation, *inter alia*, to Mills, and the possible consequence if he failed to comply.  In addition, Caisse signed the Confession in favor of Mills for the same

16

amount, (FAC, Ex. E at p. 7 ¶ 2.), and acknowledged that the Confession was a condition of his negotiated guilty plea.  (FAC, Ex. E. at p. 8 ¶ 4).  Even if Caisse did not owe a debt to Mills before the guilty plea, he voluntarily assumed a debt directly to Mills as a condition to his guilty plea.

Caisse's second and third points focus on the qualifying clauses in § 523(a)(7): the restitution must be payable to and for the benefit of a governmental unit and cannot be compensatory.[7]  Essentially, he contends that the restitution was payable to Mills, not a governmental unit, and was intended to compensate him for his actual pecuniary loss, even though Caisse argues that Mills did not suffer an actual pecuniary loss.

In any event, the Supreme Court rejected Caisse's interpretation of § 523(a)(7) in *Kelly v. Robinson*, 479 U.S. 36 (1986).  There, the debtor pleaded guilty to larceny involving the receipt of welfare benefits.  The state court placed the debtor on probation, and as a condition of probation, ordered her to make restitution payments in the exact amount of the improperly obtained welfare benefits to the Connecticut Office of Adult Probation.  *Id.* at 38-39.  After she filed for bankruptcy and received a discharge, the Connecticut Probation Office sought to collect the restitution, and the debtor commenced an adversary proceeding seeking a declaration that the obligation was discharged.  *Id.* at 39-40.

Relying on the longstanding judicially-created exception to discharging criminal restitution judgments and principles of federalism, *id.* at 47-49, the Supreme Court ruled that § 523(a)(7) excepts from discharge "any condition a state criminal court

---

[7]        Caisse does not dispute that the restitution obligation qualifies as a "fine, penalty or forfeiture."

imposes as part of a criminal sentence." *Id.* at 50. Furthermore, neither of the qualifying clauses allowed the discharge of a state criminal judgment that took the form of restitution. First, the criminal justice system is operated to benefit society as a whole and not just the victim. Although restitution resembles a judgment for the benefit of the victim, that conclusion is undermined by the fact that the victim has no control over the amount of restitution or whether it will be awarded, and the decision to impose restitution turns on the penal goals of the state and the defendant's situation rather than on the victim's injury. *Id.* at 52; *accord United States v. Gelb* (*In re Gelb*), No. 95–CV–4725 (FB), 1998 WL 221366, at *2 (E.D.N.Y. Apr. 29, 1998). In short, a criminal judgment that includes restitution is always for the benefit of a governmental unit because it vindicates the governmental unit's interest in the punishment and the rehabilitation of the defendant. *See Kelly v. Robinson*, 479 U.S. at 53. Second, because restitution is imposed for the benefit of the governmental unit to advance its rehabilitative and penal goals, it is not assessed for the compensation of the victim. *Id.*; *Gelb*, 1998 WL 221366, at *3.

The Restitution Order falls squarely within the broad rule established in *Kelly* because it was imposed as part of a state criminal sentence. Furthermore, New York law recognizes that restitution serves the dual purpose of compensating the victim and advancing the state's penal goals. *People v. Home,* 767 N.E.2d 132, 136 (N.Y. 2002) (The sponsors of the 1983 amendments to N.Y. PENAL LAW § 60.27 recognized that "restitution serves the dual, salutary purposes of easing the victim's financial burden while reinforcing the offender's sense of responsibility for the offense and providing a constructive opportunity for the offender to pay his or her debt to society"); *People v.*

18

*Kim*, 694 N.E.2d 421, 423 (N.Y. 1998) (The goals of restitution "are to insure, to the maximum extent possible, that victims will be made whole and offenders will be rehabilitated and deterred, by requiring *all* defendants to confront concretely, and take responsibility for, the *entire* harm resulting from their acts."); *People v. Hall-Wilson*, 505 N.E.2d 584, 585 (N.Y. 1987) ("Viewed from the perspective of punishing a defendant, restitution is recognized as an effective rehabilitative penalty because it forces defendants to confront concretely—and take responsibility for—the harm they have inflicted, and it appears to offer a greater potential for deterrence.") (citing *Kelly*, 479 U.S. at 49 n.10). And because it serves the state's penal goals, the restitution payment is for the benefit of the state. [8]

Caisse's alternative, narrow interpretation of § 523(a)(7), which seeks to limit *Kelly*'s holding to its facts, "the wrongful receipt of welfare benefits" from a governmental unit, (Motion at 11-12), is unconvincing. He relies on two cases originating within the Sixth Circuit. In *Hughes v. Sanders*, 469 F.3d 475 (6th Cir. 2006), *cert. denied*, 549 U.S. 1341 (2007), the Court of Appeals concluded that *Kelly* applied narrowly to criminal restitution payable to a governmental unit, *id.* at 478, and did not except from discharge a punitive monetary sanction entered in *civil* litigation because it was payable to a private litigant to compensate him for his injuries. *Id.* at 479. The Bankruptcy Court in *Heitmanis v. Rayes* (*In re Rayes*), 496 B.R. 449 (Bankr. E.D. Mich.

---

[8]    Further, the restitution was payable to a governmental unit in the first instance. The restitution was payable to Safe Horizon, which was designated pursuant to N.Y. CRIM PROC. LAW § 420.10(1) as the restitution agency. Section 420.10(1) directs the sentencing court to designate an official or organization other than the district attorney to receive the payments. In New York City, the mayor designates the official or organization eligible for selection by the court. *Id.*, § 420.10(8)(a). Thus, Safe Horizon was selected and is controlled by New York City and the selecting court, and receives restitution payments as the agent for the government.

2013) followed *Hughes* and ruled that a criminal restitution judgment initially payable to the Probation Department for ultimate payment to the victims was dischargeable. *Id.* at 454, 456. Construing *Kelly* narrowly, the *Rayes* court criticized the Supreme Court's decision as going "materially and unnecessarily beyond its facts, and to that extent at least, may well be seen as dicta." *Id.* at 454.

The *Rayes* court's reasoning was rejected three years later by its own District Court in *Auto-Owners Ins. Co. v. Smith* (*In re Smith*), 547 B.R. 774 (E.D. Mich. 2016). There, the debtor pleaded guilty to assault and battery arising from a "road rage" incident. The criminal judgment included a restitution order payable to the county clerk, who would in turn distribute funds to the victim and her insurer as compensation for losses they had incurred. *Id.* at 775-76. The debtor filed for bankruptcy and sought a declaration that the restitution judgment was discharged. The Bankruptcy Court denied the insurer's motion for summary judgment because the judgment was not payable for the benefit of a governmental unit and was compensation for a pecuniary loss. *Id.* at 776-77.

The District Court reversed. After reviewing the *Kelly* decision and its grounding in the historic judicial exception to discharging criminal restitution and the principles of federalism, the District Court first concluded that *Hughes v. Sanders* was "neither applicable nor instructive" because it dealt with civil rather than criminal restitution. *Id.* at 778. Furthermore, under *Kelly*, a state criminal restitution judgment is not dischargeable even if it is ultimately payable to a non-governmental victim and is intended to compensate the victim for her pecuniary loss. *See id.* at 778-79. *Kelly* means that all state criminal restitution judgments are non-dischargeable. *See id.* at

779; *accord Colton v. Verola* (*In re Verola*), 446 F.3d 1206, 1209 (11th Cir.), *cert denied*,
549 U.S. 885 (2006); *Sokol*, 170 B.R. at 559 ("The import of *Kelly v. Robinson* is that
the Bankruptcy Code's dischargeability provisions are not intended to interfere with
state criminal sentencing procedures.  Judgments of restitution, regardless of how they
are computed, are penal and not dischargeable under 11 U.S.C. § 523(a)(7).").

   The continuing vitality of *Kelly*'s broad holding is also apparent from Congress's
failure to change it.  "If Congress wants to supersede the Supreme Court's decisions, it
must amend the statute the Court has construed; continuity of text equals continuity of
meaning."  *In re Towers*, 162 F.3d 952, 954 (7th Cir. 1998), *cert. denied*, 527 U.S. 1004
(1999).

   Finally, Caisse's argument essentially advocates the minority decision in *Kelly*
that was rejected by the majority.  The minority criticized the Court's decision because
the restitution judgment was intended, in part, to compensate the victim for its actual
damage.  *Kelly*, 479 U.S. at 55 (Marshall, J., dissenting).  The minority also pointed out
that the other qualifying exception did not apply because the restitution was payable to
the state for its own injury, and criticized the majority opinion as broad enough to mean
that any fine, penalty or forfeiture would be for the benefit of a governmental unit,
making § 523(a)(7) superfluous.  *Id.* at 55 n.3.  Despite these criticisms, the Supreme
Court "went out of its way to engage this qualifying clause and to stress that it posed no
serious threat to criminal restitution orders imposed by a state."  *In re Thompson*, 418
F.3d 362, 366 (3d Cir. 2005).  While the *Rayes* court criticized certain parts of the *Kelly*
decision as *dicta* to support its narrow reading, "[w]e are to give great weight to the
Supreme Court's considered dicta in limning the breadth of situations its decisions

govern." *Id.*; *accord McDonald v. Master Fin., Inc.* (*In re McDonald*), 205 F.3d 606, 612 (3d Cir.) ("[W]e should not idly ignore considered statements the Supreme Court makes in dicta. The Supreme Court uses dicta to help control and influence the many issues it cannot decide because of its limited docket."), *cert. denied*, 531 U.S. 822 (2000).

Accordingly, the motion to dismiss the Fourth Claim is denied, and the First, Second and Third Claims are dismissed with leave to replead within thirty days of the date of the order reflecting the disposition of the Motion.  Submit order.

Dated:    New York, New York
          February 21, 2017

                                    /s/ *Stuart M. Bernstein*
                                    STUART M. BERNSTEIN
                                    United States Bankruptcy Judge